IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2021 Session

## FIRST COMMUNITY MORTGAGE, INC. v. APPRAISAL SERVICES GROUP, INC. ET AL.

**Appeal from the Chancery Court for Weakley County**
**No. 24599    W. Michael Maloan, Chancellor**

———————————————————

**No. W2020-01246-COA-R3-CV**

———————————————————

A mortgage company appeals the dismissal of its lawsuit against an appraisal company and its employee as barred by the applicable statute of limitations. The appraisal company and its employee urge this Court to affirm the dismissal of the lawsuit and to award them attorney's fees under Tennessee Code Annotated section 20-12-119(c). We affirm the dismissal of the mortgage company's action against the appraisal company and its employee. We conclude, however, that section 20-12-119(c) does not authorize the award of attorney's fees incurred for appellate work.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Brock East and Benjamin Lewis, Murfreesboro, Tennessee, for the appellant, First Community Mortgage, Inc.

Adam P. Nelson and Bradford G. Box, Jackson, Tennessee, for the appellees, Appraisal Services Group, Inc., and Deana L. Miles.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

On September 12, 2019, Plaintiff/Appellant First Community Mortgage, Inc. ("Appellant") filed a complaint for damages against various defendants, including Defendant/Appellee Appraisal Services Group, Inc. ("Appraisal Services") in the

Rutherford County Chancery Court.[1] Because this case was resolved by a motion to dismiss, we take the facts from the complaint. The complaint alleged that in 2015, property owner Phil D. Finch arranged to refinance real property located in Weakley County, Tennessee. Mr. Finch contracted with Traditional Home Mortgage, Inc. ("Traditional Home Mortgage") for the refinance. Traditional Home Mortgage hired Appraisal Services to perform appraisal services related to the loan, which they completed in 2015. According to the complaint, however, Appraisal Services negligently failed to discover or disclose the existence of an encroachment issue during their appraisal, whereby improvements on the subject property extended across a property line, encroaching onto a neighboring tract of land.

The alleged negligence was not discovered at the time, and the refinance loan was completed, secured by the underlying real property. Appellant eventually purchased the mortgage from Traditional Home Mortgage. Appellant then sold the mortgage to AmeriHome Mortgage Company, LLC ("AmeriHome Mortgage"). AmeriHome Mortgage sold the property to Federal National Mortgage Association ("FNMA"). During an audit, FNMA discovered the encroachment issue; according to the complaint, one-half of Mr. Finch's home and swimming pool were actually located on a neighboring tract of land. FNMA thereafter requested that AmeriHome repurchase the mortgage, which it did. AmeriHome next requested that Appellant repurchase the mortgage; the repurchase occurred in January 2018.

On June 7, 2019, the underlying property was sold at foreclosure. The foreclosure sale left a deficit of over $100,000.00, borne by Appellant. According to the complaint, Appellant would not have been required to repurchase the property but for the encroachment issues; Appellant would therefore not have suffered any losses as a result of the foreclosure of the property. The complaint further alleged that Appellant's damages were the direct and proximate result of Appraisal Services' negligence in failing to discover or disclose the encroachment issues during the 2015 appraisal. Appellant therefore requested both compensatory and punitive damages, along with interest, attorney's fees, and costs.

As is relevant to this appeal, on October 28, 2019, Appraisal Services filed its first motion to dismiss the complaint on the basis of improper venue, lack of subject matter jurisdiction, and failure to state a claim due to the expiration of the applicable statute of limitations, Tennessee Code Annotated section 28-3-104(d). Appraisal Services filed an amended motion to dismiss on November 6, 2019, which more fully set forth its statute of limitations defense. In both its initial motion and its amended motion to dismiss, Appraisal

---

[1] The initial complaint named Traditional Home Mortgage, Inc., Source Appraisal Management, LLC, Old Republic Title Company of Tennessee, and United Title, LLC. Appellant voluntarily dismissed Old Republic Title Company of Tennessee and United Title, LLC, in March 2020. On July 20, 2020, the trial court entered an order dismissing Defendant Source Appraisal Management, LLC based on a settlement between the parties. Of the original defendants, only Appraisal Services is at issue in this appeal.

Services also argued that it should be awarded attorney's fees pursuant to Tennessee Code Annotated section 20-12-119(c).

Appellant responded in opposition to Appraisal Source's motion to dismiss on November 18, 2019. Therein, Appellant argued that the trial court had subject matter jurisdiction, and that Rutherford County was a proper venue, but that the case could be transferred to the proper venue if necessary, pursuant to Tennessee Code Annotated section 16-1-116. Appellant also argued that its claim was timely as the statute of limitations contained in section 28-3-104(d) was enacted after the appraisal in this case and therefore inapplicable. Appellant further argued that to apply section 28-3-104(d) retroactively would impair its vested right. Appraisal Services thereafter promptly replied to Appellant's response.

On December 10, 2019, the Rutherford County Chancery Court entered an order transferring this case to Weakley County Chancery Court ("the trial court"). On or about February 14, 2020, Appellant filed an amended complaint in the trial court, which named Appraisal Source's employee, Deana L. Miles (together with Appraisal Services, "Appellees"), as an additional defendant. The amended complaint raised three causes of action: declaratory judgment, negligence, and breach of contract. Appellant did not allege, however, that Appellees breached any contract; the breach of contract allegations concerned other defendants. On February 21, 2020, Appraisal Services filed a reply in further support of its motion to dismiss on the basis of the expiration of the applicable statute of limitations. On April 28, 2020, Appellees filed a joint motion to dismiss the amended complaint on the same basis; the joint motion was accompanied by a memorandum of law. Neither the joint motion to dismiss nor the memorandum of law referenced a request for attorney's fees under section 20-12-119(c).

On August 12, 2020, the trial court entered a lengthy order granting Appellees' motion to dismiss. Therein, the trial court ruled that the "negligence occurred no later than January of 2018" and that under section 28-3-104(d), Appellant was required to file its complaint within one year of that date, or no later than January 2019. The trial court rejected Appellant's argument that section 28-3-104(d) was inapplicable, as it determined that the statute applied to actions accruing on or after July 1, 2017; because Appellant's cause of action accrued well after that date, in January 2018, the statute was applicable, and Appellant's complaint was untimely. The trial court further rejected Appellant's argument that the claim did not accrue until June 2019, as the accrual occurred when Appellant was forced to repurchase the property, not when the foreclosure sale occurred. Because the complaint was not timely filed, the trial court ruled that it must be dismissed. The trial court also ruled that "[a]ny costs or expenses potentially allowable to [Appellees] under Tenn. Code Ann. § 20-12-119(c) are stayed and reserved at this time pursuant to Tenn. Code Ann. § 20-12-119(c)(3)." Finally, the trial court designated its ruling as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Appellant filed a timely notice of appeal on September 11, 2020.

## II. ISSUES PRESENTED

Appellant raises a single issue in this case: "Whether the trial court erred in granting Appellees' motion to dismiss the first amended complaint for failure to state a claim upon which relief can be granted pursuant to Tennessee Rules of Civil Procedure 12.02(6)." As an additional issue, Appellees request attorney's fees pursuant to Tennessee Code Annotated section 20-12-119(c).

## III. STANDARD OF REVIEW

The standard of review regarding dismissal at the motion to dismiss stage is well-settled. Under the standard of review applicable to motions to dismiss, review is "limited to an examination of the complaint alone." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 537 (Tenn. Ct. App. 2012) (citing *Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990)). "The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law." *PNC*, 387 S.W.3d at 537. In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook ex. rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). However, we are not required to accept as true conclusions of law. *Riggs v. Burson*, 941 S.W.2d 44, 47–48 (Tenn. 1997). An appellate court should uphold the grant of a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). We review the trial court's decision on a motion to dismiss de novo without a presumption of correctness. *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014).

## IV. DISCUSSION

### A.

In support of its contention that the trial court erred in granting Appellees' motion to dismiss, Appellant essentially makes three alternative arguments: (1) that the statute of limitations relied upon by the trial court, Tennessee Code Annotated section 28-3-104(d), is inapplicable; (2) that if applicable, application of section 28-3-104(d) impairs Appellant's vested right; and (3) the trial court erred in concluding that the cause of action at issue accrued in January 2018. We will consider each argument in turn.

The parties first disagree regarding whether the statute of limitations relied on by the trial court, Tennessee Code Annotated section 28-3-104(d), should even apply in this case. Section 28-3-104(d) provides as follows:

Any action to recover damages against a real estate appraiser arising out of the appraiser's real estate appraisal activity shall be brought within one (1) year from a person's discovery of the act or omission giving rise to the action, but in no event shall an action to recover damages against a real estate appraiser be brought more than five (5) years after the date the appraisal was conducted.

The trial court ruled that Appellant's cause of action accrued in January of 2018 when Appellant was forced to repurchase the loan. Applying section 28-3-104(d), the trial court ruled that Appellant was required to file its complaint within one year. Appellant's September 2019 complaint was therefore well outside the applicable statute of limitations.

Appellant's argument that the trial court incorrectly applied the statute of limitations focuses largely on its claim that to do so is a retroactive impairment of its vested right, discussed *infra*. Instead, Appellant argues that the six-year statute of limitations under Tennessee Code Annotated section 28-3-109 would apply to this cause of action. In order to determine this issue, however, we must first determine whether the amended language contained in section 28-3-104(d) is applicable to this case in the first instance.

To resolve this issue, we look to the enabling provision of the 2017 legislation that enacted section 28-3-104(d). *Cf.* ***Carter v. State***, 952 S.W.2d 417, 419 (Tenn. 1997) (describing this portion of the legislation at issue as the "enabling provision of the Act in question" and noting that "[a]ccording to standard practice, this provision was not published with the rest of the statute in the Tennessee Code Annotated."); *see also* ***State v. Cauthern***, 967 S.W.2d 726, 735 (Tenn. 1998) ("We conclude that the specific enabling provision of the 1993 act, which clearly states that the amendment applies to all offenses committed *on or after* July 1, 1993, controls . . . ."). According to this provision, the act "shall take effect July 1, 2017, the public welfare requiring it, and shall apply to actions accruing and appraisals conducted on or after this date." 2017 Tenn. Laws Pub. Ch. 234 (H.B. 376).

Each party relies on only a portion of the statute to support its argument. Appellant contends that because the appraisal was not "conducted on or after" July 1, 2017, the amended statute cannot apply. Appellees omit the portion of the statute that discusses appraisals and relies only on the portion of the statute that applies the amendment to "actions accruing . . . on or after" July 1, 2017. Because there is no dispute that the cause of action accrued at the earliest in January 2018, Appellees contend that the amended language is applicable.

Of course, we cannot omit words from a statute in determining its proper reading. As the Tennessee Supreme Court has explained,

When courts are called upon to construe a statute, their goal is to give

full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope. Because the legislative purpose is reflected in a statute's language, the courts must always begin with the words that the General Assembly has chosen. Courts must give these words their natural and ordinary meaning. And because these words are known by the company they keep, courts must also construe these words in the context in which they appear in the statute and in light of the statute's general purpose.

When a statute's text is clear and unambiguous, the courts need not look beyond the statute itself to ascertain its meaning. Statutes, however, are not always clear and unambiguous. Accordingly, when the courts encounter ambiguous statutory text—language that can reasonably have more than one meaning—we must resort to the rules of statutory construction and other external sources to ascertain the General Assembly's intent and purpose.

\* \* \*

[T]he courts should endeavor to give effect to the entire statute by harmonizing the conflicting provisions, and by construing each provision consistently and reasonably. The courts should avoid basing their interpretation on a single sentence, phrase, or word, but should instead endeavor to give effect to every clause, phrase, or word in the statute. The courts' goal is to construe a statute in a way that avoids conflict and facilitates the harmonious operation of the law.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526–27 (Tenn. 2010) (internal citations and footnotes omitted).

Thus, we first look to the express language of the enacting provision. In this case, the Tennessee General Assembly expressly stated that the act, i.e., the one-year statute of limitations contained in section 28-3-104(d), would apply to "actions accruing *and* appraisals conducted on or after" July 1, 2017. 2017 Tenn. Laws Pub. Ch. 234 (emphasis added). Each of the parties to this appeal want to focus only on one portion of the above language. However, it is well-settled that "statutory phrases separated by the word 'and' are usually to be interpreted in the conjunctive." *Stewart v. State*, 33 S.W.3d 785, 792 (Tenn. 2000) (citing *Tennessee Manufactured Hous. Ass'n v. Metropolitan Gov't of Nashville*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990) (stating that "'and' is a conjunctive article indicating that the portions of the sentence it connects should be construed together")) (noting some exceptions to this rule when "necessary to further the intent of the legislature"). Moreover, "[t]here is a presumption that every word in a statute has meaning and purpose and should be given full effect so long as the obvious intention of the General Assembly is not violated by so doing." *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013) (citing *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005)).

Based on these requirements, we must conclude that the legislature intended that the newly enacted statute of limitations would apply to both actions accruing on or after July

1, 2017, and appraisals conducted on or after that date. *Cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 117 (2012) (stating that the use of the conjunction "and" followed by "two elements in the construction" often "entails an express or implied *both* before the first element"). To be sure, Appellant provides no argument, supported by legal authority or otherwise, to suggest that this interpretation is incorrect.[2] In our view, this interpretation properly takes into account the legislature's choice to include consideration of both the accrual date and the appraisal date in determining whether the new provision applies. To hold otherwise—that the new statute of limitations applies only in the single situation wherein both the action accrued and the appraisal was conducted on or after July 1, 2017—would essentially nullify the language concerning accrual, as any cause of action based on an appraisal conducted on or after July 1, 2017 would necessarily accrue on or after July 1, 2017. Thus, an interpretation that the new statute applies both when a cause of action accrues on or after July 1, 2017, and when an appraisal is conducted on or after July 1, 2017, best encompasses all of the language of the enabling provision and does not render the reference to accrual superfluous. *See **Young v. Frist Cardiology, PLLC***, 599 S.W.3d 568, 571 (Tenn. 2020) (quoting ***City of Caryville v. Campbell Cnty.***, 660 S.W.2d 510, 512 (Tenn. Ct. App. 1983)) ("We must 'construe a statute so that no part will be inoperative, superfluous, void or insignificant[.]'"). Consequently, while Appellant only meets one of these requirements—that the cause of action accrued on or after July 1, 2017—the newly enacted statute of limitations contained in section 28-3-104(d) was clearly intended to apply in this situation. The trial court therefore did not err in concluding that section 28-3-104(d) was applicable to Appellant's cause of action, notwithstanding the fact that the appraisal at issue occurred in 2015.

Appellant next contends that even if section 28-3-104(d) is applicable, it cannot be applied retroactively to Appellant's cause of action. In support, Appellant cites ***Gunter v. U.C.H.R.A.***, No. M1999-01591-COA-R3-CV, 2002 WL 1379544 (Tenn. Ct. App. June 27, 2002). In ***Gunter***, the plaintiff was involved in an automobile accident in December 1997 while working in the scope of his employment. Three hundred and sixty-four days later, the plaintiff filed a general sessions court lawsuit against the other driver and his employer. The case was eventually removed to circuit court and the employer filed a motion to dismiss based on governmental immunity and the expiration of the statute of limitations. The trial court granted the motion to dismiss, ruling that because the circuit court had exclusive jurisdiction over the plaintiff's case, the general sessions court lacked subject matter jurisdiction; the filing in the general sessions court therefore did not toll the statute of limitations, and the statute of limitations had run prior to the transfer to circuit court. *Id.* at \*1.

On appeal, the plaintiff relied on Tennessee Code Annotated section 16-1-116, which provides that a court presiding over a case which lacks jurisdiction "shall" transfer

---

[2] The first time that Appellant addressed this question in any detail was in its rebuttal during oral argument.

the case to a court with jurisdiction.[3] *Id.* at *2. The Court of Appeals noted, however, that section 16-1-116 was enacted after the circuit court's dismissal of the case. *Id.* at *1. We explained that statutes are generally applied prospectively, unless retroactivity is expressly declared or the statute is purely procedural in nature. *Id.* at *4 (citing *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976); *Jennings v. Jennings*, 165 Tenn. 295, 54 S.W.2d 961 (Tenn. 1932)). But even retrospective application of a purely procedural statute "is constitutionally forbidden if it creates a new right, takes away a vested right or impairs contractual obligations." *Id.* Thus, the question remained whether application of section 16-1-116 would impair a vested right of the employer. The Court of Appeals held that it did, noting that

> [w]hen a cause of action is barred by a statute of limitations, in force at the time the right to sue arose and until the time of limitation expired, [] the right to rely upon the statute as a defense is a vested right that can not be disturbed by subsequent legislation.

*Id.* (quoting *Yancy v. Yancy*, 52 Tenn. 353, 362 (Tenn. 1871)). Because the plaintiff's claim was already barred by the time that section 16-1-116 was enacted, allowing the plaintiff to rely on the statute would impair the employer's vested right in its statute of limitations defense. *Id.* at *5. As a result, we held that the plaintiff could not rely on the newly enacted statute.

The situation in this case is clearly not analogous. In *Gunter*, section 16-1-116 could not be applied retroactively because it impaired the defendant employer's vested right in its defense. *Id.* at *4–5. To be sure, retroactive application of section 28-3-104(d) could also be "constitutionally forbidden[]" if it similarly impaired a vested right of Appellant's.[4]

---

[3] Section 16-1-116 provides as follows:

Notwithstanding any other law or rule of court to the contrary, when an original civil action, an appeal from the judgment of a court of general sessions, or a petition for review of a final decision in a contested case under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, is filed in a state or county court of record or a general sessions court and such court determines that it lacks jurisdiction, the court shall, if it is in the interest of justice, transfer the action or appeal to any other such court in which the action or appeal could have been brought at the time it was originally filed. Upon such a transfer, the action or appeal shall proceed as if it had been originally filed in the court to which it is transferred on the date upon which it was actually filed in the court from which it was transferred.

[4] Appellees assert that section 28-3-104(d) could be applicable even if Appellant's cause of action had accrued at the time the statute of limitations went into effect. *See Bradley v. LaPenna*, 490 S.W.2d 500, 501 (Tenn. 1973) (quoting 51 American Jurisprudence, *Limitation of Actions* § 38, at 620 (2d ed.)) ("'Unless forbidden by the state constitution, . . . a change shortening the limitation period can validly be made applicable to existing causes of action, subject to the important qualification that there must be a reasonable time permitted for a party who has an existing cause of action to avail himself of his remedy before the bar of the statute as thus changed becomes effective. There is no vested right in the statute of

*Id.* at \*4; *see also* **Doe v. Sundquist**, 2 S.W.3d 919, 923 (Tenn. 1999) (quoting **Morris v. Gross**, 572 S.W.2d 902, 907 (Tenn. 1978)) ("We have construed [Article I, section 20 of the Tennessee Constitution] as prohibiting laws 'which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed.'"); **Bryan v. Leach**, 85 S.W.3d 136, 143 (Tenn. Ct. App. 2001) (citing Tenn. Const. Art. 1, Sec. 20) ("[W]hen a statute creates a new right, eliminates a vested right, or impairs a contractual obligation, its retrospective application is constitutionally forbidden."). But at the time that section 28-3-104(d) became effective, Appellant had no vested right to impair.

The Tennessee Supreme Court has explained that a vested right, "although difficult to define with precision, is one 'which it is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice.'" **Doe**, 2 S.W.3d at 923 (quoting **Morris**, 572 S.W.2d at 907). In this case, the claims against Appellees sounded in tort.[5] The question of what constitutes a vested right in tort is well-settled:

> A vested right of action in tort is a cause of action which has accrued, thereby becoming presently enforceable. *See* **Jones v. Morristown–Hamblen Hosp. Assoc., Inc.**, 595 S.W.2d 816, 820–21 (Tenn. Ct. App. 1979). Vested rights of action in tort may be classified as constitutionally-protected property interests. "[A] vested right of action is as much property as are tangible things . . . and enjoys the full protection of the due process clauses of the Federal and State Constitutions." **Morris v. Gross**, 572 S.W.2d 902, 905 (Tenn. 1978); *see also* **Logan v. Zimmerman Brush Co.**, 455 U.S. 422, 428, 102 S. Ct. 1148, 71 L.Ed.2d 265 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause.").

**Mills v. Wong**, 155 S.W.3d 916, 921 (Tenn. 2005) (footnote omitted). "A statute of limitation, therefore, may not be given retrospective application so as to bar an accrued right of action, but may bar a cause of action which has not yet accrued or vested." **Jones**, 595 S.W.2d 820 (citing 16 C.J.S. *Constitutional Law* § 254 at p. 1242).

We turn then to the question of when Appellant's right of action "accrued." *Cf.* **Smith v. Tennessee Nat'l Guard**, 551 S.W.3d 702, 709 (Tenn. 2018) (holding that, in determining whether to apply a statute that expressly provides that it applies to actions that

---

limitations in force when a cause of action accrues, and the period allowed for suit may be shortened provided a reasonable time is permitted to bring the action.'"). Because we conclude that Appellant's cause of action had not accrued when section 28-3-104(d) went into effect, we need not address this issue.

[5] As previously discussed, although breach of contract was alleged in the complaint, it was not alleged against Appellees. Moreover, in its brief, Appellant cites legal authority applicable to tort actions in determining the accrual date of its action against Appellees.

accrued on or after a certain date, "[t]he crucial task . . . is determining when [the plaintiff's] [] claim accrued"). According to the Tennessee Supreme Court, tort actions accrue "when, and only when, the force wrongfully put in motion, produces injury." *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 489 (Tenn. 1975). Here, the trial court ruled that Appellant's cause of action accrued in January 2018 when it was forced to repurchase the mortgage on the subject property. Although Appellant takes issue with this ruling on appeal, it does not in any way assert that its cause of action accrued before July 1, 2017; instead, it asserts that the accrual of the action occurred even later, in 2019. As a result, there is no dispute in this appeal that the cause of action accrued after July 1, 2017. At the time that section 28-3-104(d) became effective, Appellant had no vested right to impair. *See Mills*, 155 S.W.3d at 921. As such, applying section 28-3-104(d) simply is not "constitutionally forbidden" based on the impairment of a vested right. The trial court was therefore correct to apply section 28-3-104(d) to Appellant's cause of action against Appellees.

Appellants make one final argument: that the trial court erred in ruling that Appellant's cause of action accrued in January 2018 when it was forced to buy back the mortgage on the real property, rather than on June 7, 2019, when the foreclosure occurred. Using June 7, 2019, as the accrual date of their cause of action, Appellant contends that its September 12, 2019 initial complaint was timely. According to Appellant, it did not suffer any "identifiable damages" until the June 7, 2019 foreclosure sale when a deficit judgment was entered against Appellant.

As the Tennessee Supreme Court has explained,

> Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.

*Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995) (quotation marks omitted). Moreover, as Appellant correctly points out, a cause of action does not accrue "until a judicial remedy is available." *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 855 (Tenn. 1995). "A judicial remedy is available when (1) a breach of a legally recognized duty owed to [a] plaintiff by [a] defendant (2) causes [a] plaintiff legally cognizable damage." *Id.* Appellant's argument implicates the second element, *i.e.*, legally cognizable damage, also known as "an actual injury." *See John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (noting that in the context of malpractice actions "the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should

have known that this injury was caused by the defendant's wrongful or negligent conduct").

An actual injury does not necessarily mean money damages:

> An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility.

*Kohl*, 977 S.W.2d at 532 (citations omitted). As a result, "[a] plaintiff is not entitled to delay filing until all injurious effects or consequences of the actionable wrong are actually known." *Wyatt*, 910 S.W.2d at 855.

Applying this rule, we have held that plaintiffs suffered actual injuries when they were required to respond to an IRS request for information, *Kohl,* 977 S.W.2d at 532, when a wife was required to defend a petition to terminate her alimony, *Honeycutt v. Wilkes,* W2007-00185-COA-R3-CV, 2007 WL 2200285 (Tenn. Ct. App. Aug. 2, 2007), and when the party was forced to incur the time and expense of responding to the opposing party's motion for summary judgment, *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 543 (Tenn. Ct. App. 2012).

In this case, the facts alleged in the complaint, even viewed in the light most favorable to Appellant, demonstrate that Appellant was "forced to take some action" as a result of Appellees' alleged negligence in January 2018, when AmeriHome requested that Appellant repurchase the mortgage. At this time, the damages to Appellant were not fully realized because the property had not yet been foreclosed. But Appellant at that time suffered an actual injury as a result of Appellees' alleged negligence. The trial court did not err in concluding that Appellant's cause of action accrued in January 2018, more than one year prior to the filing of the complaint. As a result, the trial court did not err in dismissing this case on the basis of the expiration of the Tennessee Code Annotated section 28-3-104(d) statute of limitations.

## B.

As a final matter, Appellees assert that they are entitled to attorney's fees incurred on appeal pursuant to Tennessee Code Annotated section 20-12-119(c). In particular, section 20-12-119(c)(1) provides in relevant part as follows:

> [I]n a civil proceeding, where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a

claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. The awarded costs and fees shall be paid by the party or parties whose claim or claims were dismissed as a result of the granted motion to dismiss.

Appellees argue on appeal that this statute provides for an award of attorney's fees incurred on appeal and that this request is properly directed to this Court.[6]

Again, this issue requires that we construe a statute. In so doing, we keep in mind the requirement that "[t]he text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). To be sure, section 20-12-119(c) does not make our job easy by expressly stating that it authorizes an award of attorney's fees incurred on appeal. But Tennessee courts have construed attorney's fees statutes to include this authorization despite the absence of any such explicit language when doing so comports with the remedial purpose of the statute and does not otherwise violate the statute's plain language. *See, e.g.*, *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (quoting *Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993)) (allowing attorney's fees incurred on appeal under Tennessee Code Annotated section 36-5-103(c) even though not expressly stated in the statute because "[t]he allowance of attorney's fees for [an appeal] is for the benefit of the child, and the custodial spouse should not have to bear the expense incurred on the child's behalf"). As the Tennessee Supreme Court has specifically explained, "legislative provisions for an award of reasonable attorney's fees need not make a specific reference to *appellate* work to support such an award where the legislation has broad remedial aims." *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 409 (Tenn. 2006). We therefore must determine whether the attorney's fees provision of section 20-12-119(c) has "broad remedial aims."

Because the statute is silent as to both the award of attorney's fees incurred on appeal and its overall aims, we turn to its legislative history. *See State v. McNack*, 356 S.W.3d 906, 909 (Tenn. 2011) ("When the statutory language is silent as to the issue at hand, the 'objective and spirit behind the legislation' may be determinative.") (quoting *Lipscomb v. Doe*, 32 S.W.3d 840, 845 (Tenn. 2000) ("Where the language of the statute does not speak to the precise issue, courts should give consideration to the purpose, objective and spirit behind the legislation.") (quotation marks omitted)); *see also In re Baby*, 447 S.W.3d 807, 836 (Tenn. 2014) (holding that legislative silence as to the applicability of other statutory procedures created an ambiguity in the statute and resorting to the legislative history of the statute). The legislative history of section 20-12-119(c)

---

[6] Appellant filed no reply brief and therefore has not responded to this argument.

convinces us that it does not have "broad remedial aims." **_Killingsworth_**, 205 S.W.3d at 409.

Instead, during the March 28, 2012 meeting of the House Judiciary Committee, the sponsor of the House bill, Vance Dennis, stated that the purpose of the bill was not to be a "broad loser pays policy," but was to provide discouragement against "truly frivolous lawsuits." Representative Dennis further explained that the provision "only deals with costs associated with the answering of the complaint and filing your motion to dismiss." When asked whether this provision constituted a penalty, Representative Dennis agreed: "It is a penalty, essentially." But Representative Dennis repeatedly cautioned that the provision was intended to be "limited in scope." A witness invited to testify about the purpose of the provision by Representative Dennis, Ross Booher, an attorney from law firm Bass, Berry & Sims, further explained that the provision was "very, very narrowly drawn." Other legislative hearings echoed that the purpose of the bill was "very limited" and only involved the fees incurred in responding to the complaint and filing the motion to dismiss. For example, during the April 24, 2012 House Session Legislative Day, Representative Dennis stated that the bill was a "limited means to address the filing of frivolous lawsuits" that is "very limited in scope."

We begin with determining whether section 20-12-119(c) is remedial. A remedial statute is defined simply as "a law that affords a remedy." _Black's Law Dictionary_ 1544 (9th ed. 2009). Representative Dennis clearly stated that the fee-shifting provision is essentially a penalty. Over a century ago, however, the Tennessee Supreme Court explained that "if the recovery of the penalty by an individual is permitted as a remedy for the injury or loss suffered by him, the statute is remedial." **_Cherry v. Kennedy_**, 144 Tenn. 320, 232 S.W. 661, 662 (Tenn. 1921). Here, the fees awarded to the prevailing defendant are not merely a penalty, but are intended to compensate the defendant for the attorney's fees it incurred in responding to a frivolous lawsuit. As such, we cannot conclude that the statute has no remedial aims.

To the extent that section 20-12-119(c) has remedial aims, however, they are not broad. Instead, it is repeatedly emphasized throughout the legislative history how very narrowly this fee-shifting apparatus was intended to apply. Numerous times, the bill's proponent stated that the amount of fees that could be recovered were limited only to those fees that were associated with filing an answer to the complaint and the filing of the motion to dismiss. Nowhere in the legislative history was it stated that this provision was intended to apply broadly or that it covered attorney's fees incurred in an appeal that followed the grant of the motion to dismiss. Thus, it simply does not appear that section 20-12-119(c) has the "broad remedial aims" mandated by our Supreme Court as necessary to conclude that fees incurred for appellate work are authorized. **_Killingsworth_**, 205 S.W.3d at 409.

Construing section 20-12-119(c) in line with its stated aim to provide only "very limited" relief to litigants does not leave litigants without the possibility of being made

- 13 -

whole for fees incurred as a result of frivolous lawsuits. Instead, Tennessee Code Annotated section 27-1-122 has long provided for the award of attorney's fees to a party who is required to respond to a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

*See also* ***Young v. Barrow***, 130 S.W.3d 59, 66 (Tenn. Ct. App. 2003) (noting that this section was enacted in 1975). Thus, Tennessee law already provides a statute that meets the very same purpose as section 20-12-119(c) applicable in the appellate arena. Indeed, in a recent case, the defendant who was awarded attorney's fees under section 20-12-119(c) in the trial court cited not that statute, but section 27-1-122, as a basis for the award of attorney's fees incurred in the resulting appeal. *See* ***Irvin v. Green Wise Homes, LLC***, No. M2019-02232-COA-R3-CV, 2021 WL 709782, at *12 (Tenn. Ct. App. Feb. 24, 2021), *perm. app. denied* (June 9, 2021).

In Tennessee, "the Legislature is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation." ***Wilson v. Johnson Cty.***, 879 S.W.2d 807, 810 (Tenn. 1994). Thus, the Tennessee General Assembly is presumed to know that another statute already provided for attorney's fees in the context of a frivolous appeal. Certainly, the statutes are not identical. Section 27-1-122 injects more judicial discretion into the award of fees than does the plain language of section 20-12-119(c). *Compare* ***Young***, 130 S.W.3d at 66–67 ("Determining whether to award [section 27-1-122] damages is a discretionary decision."), *with* ***Snyder v. First Tennessee Bank, N.A.***, No. E2015-00530-COA-R3-CV, 2016 WL 423806, at *8 (Tenn. Ct. App. Feb. 3, 2016) (holding that the award of costs and fees under section 20-12-119(c) is mandatory). Section 27-1-122, however, does not include the same cap on damages that is present in section 20-12-119(c). But there can be little dispute that the two fee-shifting provisions serve the same aim: to compensate a party for the costs it incurred in responding to frivolous legal matters. Thus, the fact that another statute provides for fee-shifting in this very situation supports our conclusion that the aim of section 20-12-119(c) is narrow and applies only to costs incurred in the trial court, rather than being broadly applicable to attorney's fees incurred on appeal. As a result, we conclude that Tennessee law does not provide that attorney's fees for appellate work are authorized under section 20-12-119(c) in the absence of an explicit provision providing for that relief.[7] *See* ***Killingsworth***, 205

---

[7] We recognize that this decision is somewhat at odds with another recent decision of this Court, ***Donovan v. Hastings***, No. M2019-01396-COA-R3-CV, 2020 WL 6390134, at *4 (Tenn. Ct. App. Oct. 30, 2020), *appeal granted* (Apr. 7, 2021). In ***Donovan***, the majority held that section 20-12-119(c)'s award of the costs of "'the proceedings as a consequence of the dismissed claims' . . . means all acts and events that occur as a result of the dismissed claim(s) from the date the dismissed claim(s) is filed." *Id.* at *4 (quoting

- 14 -

S.W.3d at 409.

As a final matter, we note that while we typically do not entertain the question of attorney's fees under section 27-1-122 without the issue being properly raised, we can consider the issue sua sponte. *See* Tenn. Code Ann. § 27-1-122 (stating that the award of attorney's fees thereunder may be made on the court's "own motion"). *But see, e.g., **Ave. Bank v. Guarantee Ins. Co.***, No. M2014-02061-COA-R3-CV, 2015 WL 5838309, at *5 (Tenn. Ct. App. Oct. 6, 2015) (noting that we sometimes decline to award attorney's fees under section 27-1-122 when the request was not designated as an issue on appeal). In this case, we have held, as a matter of first impression, that the statutory provision cited by Appellees does not authorize an award of attorney's fees incurred on appeal. As such, we exercise our discretion to consider Appellees' request under the proper statute—section 27-1-122.

A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. ***Robinson v. Currey***, 153 S.W.3d 32, 42 (Tenn. Ct. App. 2004). This court has previously indicated that when an appeal requires the court to decide an issue of first impression, the appeal will often not be deemed frivolous. *See **Gekas v. Seton Corp.***, No. M2006-00454-COA-R3-CV, 2008 WL 836399, at *12 (Tenn. Ct. App. Mar. 28, 2008) ("Insofar as this appeal required us to decide a question of first impression, *i.e.,* the proper standard for evaluating a hospital's compliance with its bylaws, we do not believe this appeal was frivolous, and we accordingly decline to award attorney fees."). Although Appellant did not meet the express requirements of section 20-12-119(c)(5)(E) that the litigant expressly state that it is raising an issue of first impression, the question of whether the Tennessee Code Annotated section 28-3-104(d) statute of limitations enacted in 2017 was applicable to a case involving a 2015 appraisal is an issue of first impression. Thus, while Appellant may not be saved from the ambit of 20-12-119(c) for purposes of the attorney's fees Appellees incurred in the trial court, we decline to find that this appeal is frivolous for purposes of awarding damages under section 27-1-122.

---

Tenn. Code Ann, § 20-12-119(c)(1)) (footnote omitted). The majority therefore held that section "20-12-119(c) requires the trial court to award the party or parties against whom the dismissed claims were pending at the time the motion to dismiss was granted the costs and reasonable and necessary attorney fees incurred by the party due to the dismissed claims from the date those claims were filed." Judge Neil McBrayer apparently agreed with this interpretation, but concluded that the majority had applied its own rule too narrowly. *See **id.*** at *7 (McBrayer, J., dissenting).

On its face, ***Donovan***'s holding somewhat conflicts with our holding that section 20-12-119(c) was intended to apply in a limited manner. Importantly, however, the issue in ***Donovan*** was not whether fees incurred on appeal were authorized under section 20-12-119(c), but how broadly or narrowly the specific language of the statute should be interpreted as applied only to proceedings in the trial court. Because the statute was not totally silent as to this question, the ***Donovan*** panel was not forced to resort to the legislative history of the subdivision, but could rely solely on the language of the statute. *See **State v. Welch***, 595 S.W.3d 615, 623 (Tenn. 2020) ("When the text of a statute is clear and unambiguous, we need not look beyond the plain language of the statute to ascertain its meaning."). This distinction makes all the difference.

- 15 -

## V.  CONCLUSION

The judgment of the Weakley County Chancery Court is affirmed, and this cause is remanded for further proceedings as are necessary and consistent with this Opinion. Costs are assessed against Appellant First Community Mortgage, Inc., for which execution may issue if necessary.


s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE